**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHROME HEARTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 26-cv-07163 |

**COMPLAINT**

Plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome Hearts") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers and have sold products using infringing and counterfeit versions of Chrome Hearts' federally registered trademarks and/or unauthorized copies of Chrome Hearts' federally registered copyrighted works to residents of Illinois (collectively, the "Unauthorized Chrome Hearts Products"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Chrome Hearts substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Chrome Hearts to combat e-commerce store operators who trade upon Chrome Hearts' reputation and goodwill by offering for sale and selling Unauthorized Chrome Hearts Products, including jewelry, bags, shoes, and other accessories. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Chrome Hearts Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Chrome Hearts is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Chrome Hearts Products over the Internet. Chrome Hearts has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable

trademarks and infringement of its copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Chrome Hearts is a limited liability company organized and existing under the laws of the State of Delaware, with an office and principal place of business at 915 North Mansfield Avenue, Hollywood, California 90038.

5. Chrome Hearts is an American luxury brand that has been designing, manufacturing, and selling artistically styled leather goods, apparel, jewelry, accessories, home goods, and furniture since 1989. Chrome Hearts is known around the world for its unique rocker-chic jewelry, leather clothing, executive gadgets, striking hand-crafted wood furniture, and top-of-the-line sunglasses (collectively, the "Chrome Hearts Products"). Chrome Hearts is known for combining the look of rugged apparel with sterling silver details to make highly desired fashion apparel and accessories.

6. Notable clients of Chrome Hearts Products include a wide diversity of entertainers and celebrities that range from the Sex Pistols' Steve Jones to Lee Ann Rimes, Britney Spears, Cher, Billy Idol, Aerosmith, Lenny Kravitz, Guns N' Roses, Bella Hadid, Madonna, Keith Richards, David Beckham, Sting, Gloria Estefan, Christy Turlington, Naomi Campbell, Sharon Stone, Rihanna, and Drake.

7. Chrome Hearts Products are sold in exclusive Chrome Hearts stores throughout the world, and in select specialty stores around the world and in Illinois, including George Greene, AccuVision Center and Contacts & Specs in Chicago, and All About Eyes in Bloomington. Chrome Hearts products are also sold online at its official website chromehearts.com.

8. In 1993, the Council of Fashion Designers of America ("CFDA") presented Chrome Hearts with an unsolicited award as designer of the year for its innovative accessories and jewelry designs. In 1999, Chrome Hearts was featured in the "Rock Style" exhibit at the Costume Institute of the Metropolitan Museum of Art.

9. Chrome Hearts Products have been praised and recognized by numerous trade publications, as well as publications directed to the general public, including articles in the United States, Germany, Japan, and France. These articles have acclaimed the high artistry, fashion, style, and uniqueness of Chrome Hearts' designs.

10. Chrome Hearts advertises throughout the world in select high-end and artistic magazines. In addition, Chrome Hearts works with fashion and art magazines to feature editorial articles on Chrome Hearts Products.

11. Virtually all Chrome Hearts Products, including clothing, denim, and jewelry, are handmade in Los Angeles by Chrome Hearts' craftsmen. The level of expert workmanship exercised by these individuals is superior and conforms to the strict standards established by Chrome Hearts.

12. The Chrome Hearts brand is a multi-million-dollar brand and Chrome Hearts spends considerable resources marketing and protecting it.

13. Chrome Hearts is the owner of the trademark CHROME HEARTS and various composite trademarks comprising the CHROME HEARTS house mark and assorted design components (collectively, the "CHROME HEARTS Trademarks"). Chrome Hearts has continuously sold Chrome Hearts Products under the CHROME HEARTS house mark since at least as early as 1989. As a result of its long-standing use, Chrome Hearts owns common law trademark rights in its CHROME HEARTS Trademarks. Chrome Hearts has built substantial

goodwill in and to the CHROME HEARTS Trademarks. The CHROME HEARTS Trademarks are famous and valuable assets of Chrome Hearts.

14. In addition to common law trademark rights, Chrome Hearts has registered several of its CHROME HEARTS Trademarks with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark |
|---|---|
| 1,665,791<br>2,192,539 | CHROME HEARTS |
| 5,186,592<br>5,186,676 |  |
| 4,501,511<br>4,510,061 |  |
| 2,118,026<br>2,216,570<br>2,350,742<br>3,061,598<br>4,658,582 |  |
| 3,657,370 |  |
| 2,216,575<br>2,307,126 |  |

| Registration Number | Trademark |
|---|---|
| 2,375,507<br>2,408,082<br>2,538,565<br>4,504,948<br>4,648,016 | |
| 3,657,375 | |
| 2,954,539<br>3,770,379 | |
| 3,877,137<br>3,937,133 | |
| 3,365,408<br>3,385,449<br>3,388,911<br>3,731,400<br>3,743,975<br>4,809,639 | |
| 3,605,854<br>3,605,860<br>3,606,059<br>3,731,397<br>4,501,775<br>4,783,129 | |

| Registration Number | Trademark |
|---|---|
| 3,267,866<br>3,731,401<br>4,494,781 |  |
| 4,494,841 |  |
| 3,385,415<br>3,385,416 |  |
| 3,388,912 |  |
| 4,616,169<br>4,619,672<br>4,619,673<br>4,619,674<br>4,619,675 |  |

| Registration Number | Trademark |
|---|---|
| 3,784,392 | |
| 3,728,357<br>4,494,945<br>4,494,946 | |
| 3,731,402<br>4,494,838<br>4,497,576<br>5,186,624 | |
| 3,388,920<br>3,728,356<br>4,494,782 | |
| 3,731,403<br>4,510,024 | |

| Registration Number | Trademark |
|---|---|
| 3,894,026 |  |
| 2,214,641<br>2,214,642<br>2,284,625 |  |
| 4,643,894 |  |
| 3,728,359<br>4,510,020<br>4,510,021<br>4,643,872 |  |
| 3,385,439 |  |

| Registration Number | Trademark |
|---|---|
| 3,828,365<br>3,831,922<br>3,882,533 |  |
| 3,658,047 |  |
| 4,510,022 |  |
| 3,605,968 |  |
| 3,637,806<br>3,873,570<br>3,873,571<br>4,497,539 |  |

| Registration Number | Trademark |
| --- | --- |
| 3,388,913 |  |
| 4,439,515<br>4,501,509 |  |
| 4,494,842<br>4,494,843 |  |

15. The above U.S. registrations for the CHROME HEARTS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CHROME HEARTS Trademarks constitute *prima facie* evidence of their validity and of Chrome Hearts' exclusive right to use the CHROME HEARTS Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed CHROME HEARTS Trademarks are attached hereto as **Exhibit 1**.

16. Chrome Hearts has continuously used the CHROME HEARTS Trademarks in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Chrome Hearts Products since their respective dates of first use as noted on the federal trademark registration certificates.

17. The CHROME HEARTS Trademarks identify, in the United States and throughout the world, high-quality leather fashions, jewelry, and accessories designed and manufactured by Chrome Hearts.

18. Due to Chrome Hearts' longstanding use of its marks, extensive sales, and significant advertising and promotional activities, the CHROME HEARTS Trademarks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States, including in Illinois and this Judicial District.

19. The CHROME HEARTS Trademarks are distinctive when applied to Chrome Hearts Products, signifying to the consumers that the products originate from Chrome Hearts and are manufactured to Chrome Hearts' high-quality standards. Whether Chrome Hearts manufactures the products itself or licenses others to do so, Chrome Hearts has ensured that products bearing its trademarks are manufactured to the highest quality standards.

20. Chrome Hearts Products branded under the CHROME HEARTS Trademarks have been widely accepted by the public and are enormously popular. In view of this popularity, the CHROME HEARTS Trademarks are famous marks.

21. Chrome Hearts is also the owner of a federal copyright registration for the CH Plus Mark (U.S. Copyright Reg. No. VA 705-233), issued by the Register of Copyrights on March 28, 1995 (the "Chrome Hearts Copyrighted Work"). A true and correct copy of the

certificate of registration for the Chrome Hearts Copyrighted Work is attached hereto as **Exhibit 2**.

22. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Chrome Hearts Copyrighted Work to the public.

23. Since first publication, the Chrome Hearts Copyrighted Work has been used on Chrome Hearts Products and is featured on Chrome Hearts' website at chromehearts.com. Chrome Hearts Products featuring the Chrome Hearts Copyrighted Work are advertised on Chrome Hearts' website at chromehearts.com.

**The Defendants**

24. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Chrome Hearts. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

25. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Chrome Hearts to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Chrome Hearts will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

26. The success of the Chrome Hearts brand has resulted in significant counterfeiting of the CHROME HEARTS Trademarks and copying of the Chrome Hearts Copyrighted Work. In recent years, Chrome Hearts has identified many fully interactive, e-commerce stores offering Unauthorized Chrome Hearts Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

27. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] *Id.* at 22.

unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

28. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers and have sold Unauthorized Chrome Hearts Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 3**.

29. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Chrome Hearts has not licensed or authorized Defendants to use any of its CHROME HEARTS Trademarks or copy or redistribute the Chrome Hearts Copyrighted Work, and none of the Defendants are authorized retailers of genuine Chrome Hearts Products.

30. Many Defendants also deceive unknowing consumers by using the CHROME HEARTS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites

---

[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

relevant to consumer searches for Chrome Hearts Products. Other e-commerce stores operating under the Seller Aliases omit using CHROME HEARTS Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Chrome Hearts Products.

31. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

32. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Chrome Hearts Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

33. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

34. E-commerce store operators like Defendants communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

35. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Chrome Hearts' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Chrome Hearts. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

36. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Chrome Hearts Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Chrome Hearts, have knowingly and willfully used and continue to use the CHROME HEARTS Trademarks and/or copies of the Chrome Hearts Copyrighted Work in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Chrome Hearts Products into the United States and Illinois over the Internet.

37. Defendants' unauthorized use of the CHROME HEARTS Trademarks and/or copies of the Chrome Hearts Copyrighted Work in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Chrome Hearts Products, including the sale of Unauthorized Chrome Hearts Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Chrome Hearts.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

38. Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CHROME HEARTS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CHROME HEARTS Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Chrome Hearts Products offered, sold, or marketed under the CHROME HEARTS Trademarks.

40. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CHROME HEARTS Trademarks without Chrome Hearts' permission.

41. Chrome Hearts is the exclusive owner of the CHROME HEARTS Trademarks. The United States Registrations for the CHROME HEARTS Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Chrome Hearts' rights in the CHROME HEARTS Trademarks and are willfully infringing and intentionally using counterfeits of the CHROME HEARTS Trademarks. Defendants' willful, intentional, and unauthorized use of the CHROME HEARTS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Chrome Hearts Products among the general public.

42. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43. Chrome Hearts has no adequate remedy at law and, if Defendants' actions are not enjoined, Chrome Hearts will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CHROME HEARTS Trademarks.

44. The injuries and damages sustained by Chrome Hearts have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Chrome Hearts Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

45. Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Chrome Hearts Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Chrome Hearts or the origin, sponsorship, or approval of Defendants' Unauthorized Chrome Hearts Products by Chrome Hearts.

47. By using the CHROME HEARTS Trademarks on the Unauthorized Chrome Hearts Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Chrome Hearts Products.

48. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Chrome Hearts Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

49. Chrome Hearts has no adequate remedy at law and, if Defendants' actions are not enjoined, Chrome Hearts will continue to suffer irreparable harm to its reputation and the goodwill of its Chrome Hearts brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

50. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

51. The Chrome Hearts Copyrighted Work constitute original work and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

52. Chrome Hearts has complied with the registration requirements of 17 U.S.C. § 411(a) for the Chrome Hearts Copyrighted Work. The Chrome Hearts Copyrighted Work is protected by the U.S. Copyright Registration No. VA 705-233, which was duly issued to Chrome Hearts by the United States Copyright Office. At all relevant times, Chrome Hearts has been and still is the owner of all rights, title, and interest in the Chrome Hearts Copyrighted Work, which have never been assigned, licensed, or otherwise transferred to Defendants.

53. The Chrome Hearts Copyrighted Work is published on the internet and available to Defendants online. As such, Defendants had access to the Chrome Hearts Copyrighted Work via the internet.

54. Without authorization from Chrome Hearts or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Chrome Hearts Copyrighted Work on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Chrome Hearts Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of

the Chrome Hearts Copyrighted Work. Such conduct infringes and continues to infringe the Chrome Hearts Copyrighted Work in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

55. Defendants reap the benefits of the unauthorized copying and distribution of the Chrome Hearts Copyrighted Work in the form of revenue and other profits that are driven by the sale of Unauthorized Chrome Hearts Products.

56. Defendants have unlawfully appropriated Chrome Hearts' protectable expression by taking material of substance and value and creating Unauthorized Chrome Hearts Products that capture the total concept and feel of the Chrome Hearts Copyrighted Work.

57. On information and belief, Defendants' infringement has been willful, intentional, purposeful, in disregard of, and with indifference to Chrome Hearts' rights.

58. Defendants, by their actions, have damaged Chrome Hearts in an amount to be determined at trial.

59. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Chrome Hearts great and irreparable injury that cannot fully be compensated or measured in money. Chrome Hearts has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Chrome Hearts is entitled to a preliminary and permanent injunction prohibiting further infringement of the Chrome Hearts Copyrighted Work.

**PRAYER FOR RELIEF**

WHEREFORE, Chrome Hearts prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the CHROME HEARTS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Chrome Hearts Product or is not authorized by Chrome Hearts to be sold in connection with the CHROME HEARTS Trademarks;

b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Chrome Hearts Copyrighted Work in any manner without the express authorization of Chrome Hearts;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Chrome Hearts Product or any other product produced by Chrome Hearts that is not Chrome Hearts' or not produced under the authorization, control, or supervision of Chrome Hearts and approved by Chrome Hearts for sale under the CHROME HEARTS Trademarks and/or the Chrome Hearts Copyrighted Work;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Chrome Hearts Products are those sold under the authorization, control, or supervision of Chrome Hearts, or are sponsored by, approved by, or otherwise connected with Chrome Hearts;

e. further infringing the CHROME HEARTS Trademarks and/or the Chrome Hearts Copyrighted Work, and damaging Chrome Hearts' goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Chrome Hearts, nor authorized by Chrome Hearts to be sold or offered for sale, and which bear any of Chrome Hearts'

trademarks, including the CHROME HEARTS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Chrome Hearts Copyrighted Work;

2) Entry of an Order that, upon Chrome Hearts' request, those with notice of the injunction including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, TikTok, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CHROME HEARTS Trademarks and/or the Chrome Hearts Copyrighted Work;

3) That Defendants account for and pay to Chrome Hearts all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CHROME HEARTS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Chrome Hearts be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CHROME HEARTS Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Chrome Hearts Copyrighted Work, Chrome Hearts is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Chrome Hearts' election prior to any final judgment being entered, Chrome Hearts is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Chrome Hearts is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 18th day of June 2026.

Respectfully submitted,

/s/ Justin R. Gaudio

Amy C. Ziegler
Justin R. Gaudio
Trevor C. Talhami
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ttalhami@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiff Chrome Hearts LLC*